THE PEOPLE ex rel. WILLIAM M. STEVENS, Appellant,
       *v.* WILLIAM B. HAYT, Respondent.

THE PEOPLE ex rel. JAMES E. MUNGER, Appellant,
       *v.* DANIEL GEROW and others, Respondents.

| 7    39
150a 443
7h    39
72 AD ²529

*Section 17 of art. 3 of the Constitution — chap. 400 of 1875 — constitutionality of —
Section 11 of art. 10 of the Constitution.*

Section 17 of article 3 of the Constitution, prohibiting the passage of any act
   providing that any existing law, or any part thereof, shall be deemed a part of
   said act or applicable thereto, was intended to prevent the passage of acts, by
   reference to existing laws, the scope and meaning of which might not be duly
   considered by the legislature, and which might be obscure and difficult to
   understand by those to whom they were addressed.
Section 3 of chapter 400 of 1875, by which the town of Wappinger was created
   out of a portion of the town of Fishkill, provided that all laws in force,
   at the time of its passage, applicable to the town of Fishkill, should apply
   to the town of Fishkill as thereby continued. *Held,* that it was not in conflict
   with the foregoing provision of the Constitution.
The second section of the act provided that the officers of the town of Fishkill,
   serving at the time of the passage of the act, should continue in office, and
   discharge the duties of their respective offices for both towns until the next
   regular election. *Held,* that this was not in conflict with section 11 of article
   10 of the Constitution prohibiting the appointment of town officers by the
   legislature.

Appeal from orders made at the Special Term, refusing to
grant a mandamus in each of the above entitled actions.

On the 20th day of May, 1875, the legislature passed an act
for the division of the town of Fishkill, in Dutchess county, into
two towns, to be know as "Wappinger," and "Fishkill." By
the terms thereof, the act took effect immediately: and it was fur-
ther provided by section 2 that the town officers, elected in the
old town, in March, 1875, should "hold over and perform the
duties of their respective offices" for both new towns until the
first Tuesday of March, 1876.

Section 3 provided as follows: "All laws in force at and from
the time of the passage of this act, applicable to the town of
Fishkill as now existing, shall apply to the town of Fishkill as
hereby continued, except such laws as are inconsistent with the
provisions of this act."

The first action was brought by the relator, who resides in the territory assigned by said act to the town of Wappinger, to compel the defendant, who is the town clerk of the old town, elected in March, 1875, and a resident of the territory assigned to the town of Fishkill, as town clerk of Wappinger, to file a chattel mortgage, given to relator by a resident of said town of Wappinger; and to provide proper books, and index the parties thereto.

The second action was brought by the relator, who is a resident and tax-payer of said town of Wappinger, to compel the defendants, who are assessors of the old town, elected in March, 1875, and two of whom reside in said new town of Fishkill, and one in Wappinger, as the board of assessors for said town of Wappinger, to ascertain the taxable inhabitants and property thereof, real and personal, and prepare an assessment roll for said town, as required by law.

Orders to show cause why a mandamus should not issue were made in both cases by his honor, Judge BARNARD, returnable August 20, 1875; and on the return thereof, after answers by the defendants, the court refused to issue a mandamus in either case, on the ground that the act of the legislature, chapter 400 of the Laws of 1875, was unconstitutional and wholly void.

*W. I. Thorn*, for the appellant.

*Milton A. Fowler*, for the respondents. Section 2 of the act in question is in violation of section 11 of article 10 of the State Constitution, inasmuch as it provides that the town officers elected for the old town shall hold over, and perform the duties of their respective offices for both the towns of Fishkill and the town of Wappinger; and thus in effect appoints town officers for both towns. (*The People ex rel. Brown* v. *Blake*, 49 Barb., 9 ; see, also, *People ex rel. Wood* v. *Draper*, 15 N. Y., 532.) When a town is divided, as in this act, two new and distinct corporations are created. (*N. Hempstead* v. *Hempstead*, 1 Hopk., 288–294; see, also, *People* v. *Morell*, 21 Wend., 563.) Town officers are local, and must reside within their respective districts. (*In the Matter of Whiting*, 2 Barb., 514–516.) A person cannot hold two offices incompatible with each other. (*People ex rel. Whiting*

v. *Carrique*, 2 Hill, 93.) Assessors are required to sit on the third Tuesday of August in their respective towns, to hear complaints. How can the same men act as assessors for two towns, and perform this duty which is necessary to make their proceedings regular?

Pratt, J.:

The question presented by these appeals is as to the constitutionality of chapter 400 of the Laws of 1875, which assumes to divide the town of Fishkill, in the county of Dutchess, into two towns by creating, out of a portion of the territory, a new town named Wappinger.

The act is challenged as being in conflict with section 17 of article 3 of the Constitution, which is as follows:

"No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in said act."

The third section of the act, the one which is supposed to offend this constitutional provision, is in the following language:

"All laws in force at and from the time of the passage of this act, applicable to the town of Fishkill as now existing, shall apply to the town of Fishkill as hereby continued, except such laws as are inconsistent with the provisions of this act."

As was said by the late Chief Justice Oakley, in *The Sun M. Ins. Co.* v. *City of New York* (5 Sandf. S. C. R., 16): "It is not a light thing to set aside an act of the legislature, even when the objections to it are grave and mighty;" and in the outset of this discussion, it is important that we keep in mind the principles which should govern courts, in determining constitutional questions.

An act is not to be declared unconstitutional unless it is glaringly so. (*Macomber* v. *Mayor of New York*, 17 Abb., 35.)

It must clearly appear that the legislature has transcended its constitutional powers before its formal enactments will be declared void. (*People* v. *Allen*, 42 N. Y., 381.)

Before proceeding to annul, by judicial sentence, what has been enacted by the law-making power, it should clearly appear that the act cannot be supported by any reasonable intendment or allowable

presumption. (*People* v. *Supervisors of Orange*, 17 N. Y., 241; *Met. Bank* v. *Van Dycke*, 27 id., 460.)

Every presumption is in favor of the validity of legislative acts, and they are to be upheld unless there is a substantial departure from the organic law. (*People* v. *Briggs*, 50 N. Y., 558.)

Courts have no concern with the propriety or wisdom of legislation. That power has been committed, by the Constitution, to the legislative department of government, and with its exercise courts cannot interfere. (Id., pp. 558, 559.)

The strict letter of the act is not always to determine its character, but courts will rather consider what is the fair meaning, and will expound it differently from the letter to preserve the intent. (Brown's Legal Maxims, 437; *People* v. *Albertson*, 55 N. Y., 56.)

If an act is not within the mischief intended to be guarded against by the Constitution, it does not offend its provisions. (*Conner* v. *Mayor*, 5 N. Y., 293.)

In the light of these principles we are first to inquire: What was the evil designed to be guarded against by the constitutional provision which we have quoted? Plainly it was intended to prevent enactments by reference to laws, the scope and meaning of which might not be duly considered by the legislators, and which might be obscure and difficult to understand by those to whom they applied. In the expressive words of the learned counsel for the respondent, it was to prevent blind legislation.

Courts will be careful to see that this eminently wise purpose of the organic law is not frustrated by the legislature.

Is the act under consideration obnoxious to that objection? It seems to me very clear that it is not. The intention of the legislature is very plain. The object of the act is to create a new town out of a portion of the territory of the town of Fishkill. The unmistakable intention of the above quoted third section is to preserve the existing state of things with reference to the remaining portion of the town, as far as is possible, consistent with the division of the town. It is at least doubtful whether the express provisions of that section were necessary for that purpose, and whether the effect would not have been the same if the section had been wholly omitted. But it is not easy to perceive how a clear expression of that intent can be said to violate any provision of the Constitution.

There was here no enactment of a body of new law or any single law by reference; on the contrary, there was a new preservation of existing laws, or perhaps more accurately, a disclaimer of any intent to repeal or abrogate existing laws, or disturb the condition of things any further than was indispensable to carry into effect the main purpose of the act. That this intention of the law-making power is not within the mischief designed to be guarded against in the organic law, it seems to me cannot be seriously questioned.

These considerations dispose as well of the objection to the eleventh section of the act.

The act was passed May twentieth, less than three months after the annual election for town officers had been held

To avoid the inconvenience and expense of a special election for a fraction of a year, the last named section provides that for the time being, and until the recurrence of the regular time for electing town officers, the officers which had already been elected should continue in office and perform the duties of their respective offices for both towns.

The act, in other words, was not of complete effect until the succeeding March, and to that extent, the concluding section (which declares that the act shall take effect immediately), is to be understood as qualified. This expedient involved some awkward results, but I do not see that there was such a plain violation of the Constitution, in this provisional arrangement, as would justify the court in annulling the whole law.

Having arrived at the conclusion that the act of the legislature is not in conflict with the Constitution, and as that is the only question which either party desires considered, the orders appealed from should be reversed and an order made directing that the mandamus issue.

TALCOTT, J., concurred.   BARNARD, P. J., not sitting.

Order reversed, with costs.